1   DAVID  A.  ST. JOHN, ESQUIRE (SBN: 048746)
    ST.  JOHN &  FOBI, LLP
2   235 WEST SEVENTH STREET
    OXNARD, CALIFORNIA 93030-7131
3   [805] 486-8000/FACSIMILE: [805] 487-2100
    *dsj@law-pro.net*
4

5   ATTORNEYS  AND  COUNSELORS  AT  LAW  FOR  PLAINTIFFS:

6        GRACIELA ORTIZ and JESUS ORTIZ

7

8                    UNITED STATES  DISTRICT COURT
9
                  CENTRAL  DISTRICT OF CALIFORNIA
10
                  WESTERN  DIVISION– LOS ANGELES
11

12  GRACIELA ORTIZ and JESUS      ) CIVIL NO.: CV 09-2948 RGK (CTx)
    ORTIZ,                        )
13                                ) RICO CASE STATEMENT
                      Plaintiffs, ) PURSUANT TO  ORDER ENTERED
14                                ) 5 MAY 2009
            vs.                   )
15                                )
    WACHOVIA MORTGAGE, F.S.B.,    )
16  a federally chartered savings bank, )
    successor in interest to WORLD )
17  SAVINGS BANK, F.S.B., a federally )
    chartered savings bank; WELLS )
18  FARGO BANK, N.A., a federally )
    chartered national banking    )
19  association, successor in interest to )
    WACHOVIA MORTGAGE, F.S.B.,    )
20  a federally chartered savings bank; )
    GOLDEN WEST SAVINGS           )
21  ASSOCIATION SERVICE CO., a    )
    California corporation;        )
22  JACQUELINE HERRERA            )
    SALDANA; TAFOYA REALTY,       )
23  DOES 1 – 100, inclusive,       )
                                  )
24                    Defendants. )
                                  )
25  _____)

26       Plaintiffs  Graciela  Ortiz  and  Jesus  Ortiz  hereby  submit  this  RICO  Case

27  Statement,  pursuant  to the RICO Case Statement Order entered 5 May 2009, as

28  follows.

         RICO CASE STATEMENT

RICO CASE STATEMENT

1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. Sections 1962(a), (b), ©), and/or (d).  If you allege violations of more than one Section 1962 subsection, treat each as a separate RICO claim.

Response to Question No.1:

The alleged unlawful conduct contravenes the federal Racketeer Influenced and Corrupt Organizations Act of 1970 ["RICO"][Title 18 United States Code §§ 1961et. seq.]:

   ♦   RICO Section 1962(c)
   ♦   RICO Section 1962(d)

2. List each RICO defendant and state the alleged misconduct and basis of liability of each defendant.

Response to Question No.2:

RICO Defendants:

   ♦   Wachovia Mortgage, FSB
   ♦   World Savings Bank, FSB
   ♦   Wells Fargo Bank, NA
   ♦   Golden West  Savings Association Service Co.
   ♦   Jacqueline Herrera Saldana
   ♦   Tafoya Realty

Individual Defendants' Alleged Misconduct and Basis of Liability

1. World Savings Bank, FSB

World Savings Bank,  by and through Tafoya Realty and Jacqueline Herrera Saldana, solicited plaintiffs in April, 2004, by federal interstate wires and federal mails, to apply and qualify  for a mortgage loan to acquire a personal residence at 710

Ebony Drive, Oxnard, CA.  Plaintiffs at the  time owned a home at 54 Walden Street, Oxnard, CA, which plaintiffs previously acquired through Tafoya and Saldana, and a close, intimate confidential relationship emanated between plaintiffs and Saldana as a result thereof.  Plaintiffs viewed, and Saldana confirmed plaintiffs' views, that Saldana served as a trusted advisor who would advise and counsel plaintiffs in connection with real estate purchase and sale decisions.  Plaintiffs' existing mortgage obligation  upon  the Walden property consisted of a conventional 30 year mortgage loan, fixed at 6.8%, which plaintiffs were able to afford and pay the monthly mortgage obligation timely.  Saldana represented and confirmed to plaintiffs that Saldana would "take care and protect" plaintiffs' interests relative to reviewing, comprehending, explaining, and ultimately obtaining mortgage loan products and services offered by World Savings Bank.  Saldana also confirmed  and  assured plaintiffs that by virtue of a "special relationship" developed and maintained between Tafoya and Saldana with World Savings Bank, plaintiffs' interests would be protected and preserved.  Plaintiffs specifically told Saldana and Tafoya that, based upon Saldana's representations about that "special relationship," plaintiffs authorized and instructed Saldana to seek from World Savings Bank a reduction of the mortgage loan interest rate on the Walden property from 6.8% to 5.9%.

Plaintiffs allege that Saldana and Tafoya in April, 2004, advised plaintiffs to acquire a more expensive home for plaintiffs' family, financed by World Savings Bank, by applying for and obtaining an equity line of credit from plaintiffs' Walden property.  Saldana and Tafoya told plaintiffs that plaintiffs would apply 20% of those funds as a downpayment upon the Ebony property, that the monthly mortgage payments to World Savings Bank would be $1,400.00, that the plaintiffs rent the Walden property, and as a result, plaintiffs' financial position would be significantly enhanced and not expose plaintiffs to significant risks.

Plaintiffs acquired the Ebony property for $625,000.00, financed exclusively by plaintiffs' incurring a home equity line of credit upon plaintiffs' Walden property,

applying 20% as a downpayment in the form of an adjustable rate mortgage of World Savings Bank, commonly characterized as a "Pick-a-Payment ARM." Tafoya and Saldana confirmed and reassured to plaintiffs that plaintiffs would be able to refinance the Ebony property at no cost and at any time; however, plaintiffs were not informed, and World Savings Bank, Tafoya,  and Saldana did not disclose, that the mortgage loan contained a three year prepayment penalty provision, the extreme difficulty that plaintiffs would experience in attempting to obtain refinancing of that mortgage loan, and that plaintiffs were selectively targeted and specifically identified as objects of the provision of such mortgage loans predicated upon plaintiff's ethnic affiliation.

Plaintiffs allege that World Savings Bank, Tafoya, and Saldana did not properly qualify plaintiffs to ascertain and confirm that plaintiffs could in fact afford to consummate the Walden refinance and the Ebony acquisition, based upon the fact that plaintiffs' joint monthly income of approximately $4,000.00.  Plaintiffs allege that these defendants failed and refused to adequately explain and disclose to plaintiffs the significantly inherent risks associated with plaintiffs' consummation of these simultaneous transactions.  Plaintiffs were specifically reassured by defendants that the real estate market would continue its upward spiraling increase, reflecting a concomitant enhancement in real estate values, thereby allaying plaintiffs' merest apprehensions.

Plaintiffs allege that when plaintiffs began experiencing difficulties in paying upon both the Walden home equity line of credit and the Ebony mortgage loan and sought mortgage loan modification relief, including refinancing to ameliorate plaintiffs' worsening financial situation due to the increasing monthly mortgage payments, Tafoya, Saldana, and World Savings Bank refused to accord the requested relief.  Plaintiffs contend that the refusal to accord such relief was patently absent of any expressed criteria to justify denial.  Plaintiffs contend that the refusal was premised upon plaintiffs' ethnic affiliation.

4      RICO CASE STATEMENT

2.     Tafoya Realty

World Savings Bank,  by and through Tafoya Realty and Jacqueline Herrera Saldana, solicited plaintiffs in April, 2004, by federal interstate wires and federal mails, to apply and qualify  for a mortgage loan to acquire a personal residence at 710 Ebony Drive, Oxnard, CA.  Plaintiffs at the  time owned a home at 54 Walden Street, Oxnard, CA, which plaintiffs previously acquired through Tafoya and Saldana, and a close, intimate confidential relationship emanated between plaintiffs and Saldana as a result thereof.  Plaintiffs viewed, and Saldana confirmed plaintiffs' views, that Saldana served as a trusted advisor who would advise and counsel plaintiffs in connection with real estate purchase and sale decisions.  Plaintiffs' existing mortgage obligation  upon  the Walden property consisted of a conventional 30 year mortgage loan, fixed at 6.8%, which plaintiffs were able to afford and pay the monthly mortgage obligation timely.  Saldana represented and confirmed to plaintiffs that Saldana would "take care and protect" plaintiffs' interests relative to reviewing, comprehending, explaining, and ultimately obtaining mortgage loan products and services offered by World Savings Bank.  Saldana also confirmed  and  assured plaintiffs that by virtue of a "special relationship" developed and maintained between Tafoya and Saldana with World Savings Bank, plaintiffs' interests would be protected and preserved.  Plaintiffs specifically told Saldana and Tafoya that, based upon Saldana's representations about that "special relationship," plaintiffs authorized and instructed Saldana to seek from World Savings Bank a reduction of the mortgage loan interest rate on the Walden property from 6.8% to 5.9%.

Plaintiffs allege that Saldana and Tafoya in April, 2004, advised plaintiffs to acquire a more expensive home for plaintiffs' family, financed by World Savings Bank, by applying for and obtaining an equity line of credit from plaintiffs' Walden property.  Saldana and Tafoya told plaintiffs that plaintiffs would apply 20% of those funds as a downpayment upon the Ebony property, that the monthly mortgage payments to World Savings Bank would be $1,400.00, that the plaintiffs rent the

1  Walden property, and as a result, plaintiffs' financial position would be significantly

2  enhanced and not expose plaintiffs to significant risks.

3      Plaintiffs acquired the Ebony property for $625,000.00, financed exclusively

4  by plaintiffs' incurring a home equity line of credit upon plaintiffs' Walden property,

5  applying 20% as a downpayment in the form of an adjustable rate mortgage of World

6  Savings Bank, commonly characterized as a "Pick-a-Payment ARM." Tafoya and

7  Saldana confirmed and reassured to plaintiffs that plaintiffs would be able to refinance

8  the Ebony property at no cost and at any time; however, plaintiffs were not informed,

9  and World Savings Bank, Tafoya, and Saldana did not disclose, that the mortgage

10  loan contained a three year prepayment penalty provision, the extreme difficulty that

11  plaintiffs would experience in attempting to obtain refinancing of that mortgage loan,

12  and that plaintiffs were selectively targeted and specifically identified as objects of the

13  provision of such mortgage loans predicated upon plaintiff's ethnic affiliation.

14      Plaintiffs allege that World Savings Bank, Tafoya, and Saldana did not properly

15  qualify plaintiffs to ascertain and confirm that plaintiffs could in fact afford to

16  consummate the Walden refinance and the Ebony acquisition, based upon the fact that

17  plaintiffs' joint monthly income of approximately $4,000.00.  Plaintiffs allege that

18  these defendants failed and refused to adequately explain and disclose to plaintiffs the

19  significantly inherent risks associated with plaintiffs' consummation of these

20  simultaneous transactions.  Plaintiffs were specifically reassured by defendants that

21  the real estate market would continue its upward spiraling increase, reflecting a

22  concomitant enhancement in real estate values, thereby allaying plaintiffs' merest

23  apprehensions.

24      Plaintiffs allege that when plaintiffs began experiencing difficulties in paying

25  upon both the Walden home equity line of credit and the Ebony mortgage loan and

26  sought mortgage loan modification relief, including refinancing to ameliorate

27  plaintiffs' worsening financial situation due to the increasing monthly mortgage

28  payments, Tafoya, Saldana, and World Savings Bank refused to accord the requested

1   relief.  Plaintiffs contend that the refusal to accord such relief was patently absent of
2   any expressed criteria to justify denial.  Plaintiffs contend that the refusal was
3   premised upon plaintiffs' ethnic affiliation.

4           3.      Jacqueline Herrera Saldana

5           World Savings Bank,  by and through Tafoya Realty and Jacqueline Herrera
6   Saldana, solicited plaintiffs in April, 2004, by federal interstate wires and federal
7   mails, to apply and qualify  for a mortgage loan to acquire a personal residence at 710
8   Ebony Drive, Oxnard, CA.  Plaintiffs at the  time owned a home at 54 Walden Street,
9   Oxnard, CA, which plaintiffs previously acquired through Tafoya and Saldana, and
10  a close, intimate confidential relationship emanated between plaintiffs and Saldana as
11  a result thereof.  Plaintiffs viewed, and Saldana confirmed plaintiffs' views, that
12  Saldana served as a trusted advisor who would advise and counsel plaintiffs in
13  connection with real estate purchase and sale decisions.  Plaintiffs' existing mortgage
14  obligation  upon  the Walden property consisted of a conventional 30 year mortgage
15  loan, fixed at 6.8%, which plaintiffs were able to afford and pay the monthly
16  mortgage obligation timely.  Saldana represented and confirmed to plaintiffs that
17  Saldana would "take care and protect" plaintiffs' interests relative to reviewing,
18  comprehending, explaining, and ultimately obtaining mortgage loan products and
19  services offered by World Savings Bank.  Saldana also confirmed  and  assured
20  plaintiffs that by virtue of a "special relationship" developed and maintained between
21  Tafoya and Saldana with World Savings Bank, plaintiffs' interests would be protected
22  and preserved.  Plaintiffs specifically told Saldana and Tafoya that, based upon
23  Saldana's representations about that "special relationship," plaintiffs authorized and
24  instructed Saldana to seek from World Savings Bank a reduction of the mortgage loan
25  interest rate on the Walden property from 6.8% to 5.9%.

26          Plaintiffs allege that Saldana and Tafoya in April, 2004, advised plaintiffs to
27  acquire a more expensive home for plaintiffs' family, financed by World Savings
28  Bank, by applying for and obtaining an equity line of credit from plaintiffs' Walden

property.  Saldana and Tafoya told plaintiffs that plaintiffs would apply 20% of those funds as a downpayment upon the Ebony property, that the monthly mortgage payments to World Savings Bank would be $1,400.00, that the plaintiffs rent the Walden property, and as a result, plaintiffs' financial position would be significantly enhanced and not expose plaintiffs to significant risks.

Plaintiffs acquired the Ebony property for $625,000.00, financed exclusively by plaintiffs' incurring a home equity line of credit upon plaintiffs' Walden property, applying 20% as a downpayment in the form of an adjustable rate mortgage of World Savings Bank, commonly characterized as a "Pick-a-Payment ARM." Tafoya and Saldana confirmed and reassured to plaintiffs that plaintiffs would be able to refinance the Ebony property at no cost and at any time; however, plaintiffs were not informed, and World Savings Bank, Tafoya,  and Saldana did not disclose, that the mortgage loan contained a three year prepayment penalty provision, the extreme difficulty that plaintiffs would experience in attempting to obtain refinancing of that mortgage loan, and that plaintiffs were selectively targeted and specifically identified as objects of the provision of such mortgage loans predicated upon plaintiff's ethnic affiliation.

Plaintiffs allege that World Savings Bank, Tafoya, and Saldana did not properly qualify plaintiffs to ascertain and confirm that plaintiffs could in fact afford to consummate the Walden refinance and the Ebony acquisition, based upon the fact that plaintiffs' joint monthly income of approximately $4,000.00.  Plaintiffs allege that these defendants failed and refused to adequately explain and disclose to plaintiffs the significantly inherent risks associated with plaintiffs' consummation of these simultaneous transactions.  Plaintiffs were specifically reassured by defendants that the real estate market would continue its upward spiraling increase, reflecting a concomitant enhancement in real estate values, thereby allaying plaintiffs' merest apprehensions.

Plaintiffs allege that when plaintiffs began experiencing difficulties in paying upon both the Walden home equity line of credit and the Ebony mortgage loan and

sought mortgage loan modification relief, including refinancing to ameliorate plaintiffs' worsening financial situation due to the increasing monthly mortgage payments, Tafoya, Saldana, and World Savings Bank refused to accord the requested relief.  Plaintiffs contend that the refusal to accord such relief was patently absent of any expressed criteria to justify denial.  Plaintiffs contend that the refusal was premised upon plaintiffs' ethnic affiliation.

4.   Wachovia Mortgage, FSB

Plaintiffs' contentions against Wachovia Mortgage, FSB, is that of a successor in interest to World Savings Bank, and that Wachovia continued prosecuting the activities and conduct of World Savings Bank.

5.   Wells Fargo Bank, NA

Plaintiffs' contentions against Wells Fargo Bank, NA, is that of a successor in interest to Wachovia Mortgage, FSB, and Wells Fargo Bank, NA, continued prosecuting the activities of Wachovia Mortgage, FSB.

6.   Golden West Savings Association Service Co.

Plaintiffs' contentions against Golden West Savings Association Service Co., ["Golden West"], is that Golden West is a corporate affiliated entity of World Savings Bank, and served as trustee under the deed of trust executed by the parties.  Plaintiffs content that Golden West facilitated and furthered World Saving Bank's fraudulent and felonious conduct relative to the promotion of sub-prime mortgages and predatory lending practices specifically targeting racial and ethnic minorities.

3.   List the alleged wrongdoers, other than the defendants listed above, and  state the alleged misconduct of each wrongdoer.

///

///

///

///

9      RICO CASE STATEMENT

Response to Question No.3:


As of the date of the filing of plaintiffs' RICO Case Statement, plaintiffs do not  specifically identify any other individuals and entities as wrongdoers that facilitated and furthered defendants' wrongdoing. Plaintiffs expressly reserve the right to file a supplemental RICO Case Statement upon discovery of individuals and/or entities who may be ascertained as potentially liable to plaintiffs for contraventions of RICO.


4.    List the alleged victims and state how each victim allegedly was injured.

Response to Question No. 4:

Victim – Graciela Ortiz

Victim – Jesus Ortiz


Each victim was allegedly injured by defendants' material factual misrepresentations and material factual omissions pertaining to the adjustable rate mortgage and the home equity line of credit, and that in fact these victims were unsuitable and unqualified to incur such mortgage loan obligations. The victims sustained not only the loss of both the Walden and the Ebony properties, but also destruction of credit, exposure to both foreclosure proceedings and damage claims. The victims' payments upon both the mortgage loan and the home equity line of credit only served to reduce the principal amount negligibly, and the interest expense increased significantly.

///

///

///

10    RICO CASE STATEMENT

5.     Describe in detail the pattern of racketeering activity or collection of unlawful debt alleged for each RICO claim.  A description of the pattern of racketeering shall include the following information:

a.     List the alleged  predicate  acts  and  the  specific statutes which were allegedly violated;

b.     Provide the dates of each predicate act, the participants in each predicate act, and a description of the facts constituting  predicate act;

c.     If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P 9(b).  Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;

d.     Describe whether the alleged predicate acts relate to the enterprise as part of a common plan.  If so, describe in detail.


Response to Question No. 5:


a.     Predicate Acts:


Plaintiffs allege that the following conduct and  activities identified herein below constitute "predicate acts," or "racketeering activity," as specified pursuant to

1   RICO § 1961(1) [18 U.S.C. §1961(1)].

2       World Savings Bank,  by and through Tafoya Realty and Jacqueline Herrera

3   Saldana, solicited plaintiffs in April, 2004, by federal interstate wires and federal

4   mails, to apply and qualify  for a mortgage loan to acquire a personal residence at 710

5   Ebony Drive, Oxnard, CA.  Plaintiffs at the  time owned a home at 54 Walden Street,

6   Oxnard, CA, which plaintiffs previously acquired through Tafoya and Saldana, and

7   a close, intimate confidential relationship emanated between plaintiffs and Saldana as

8   a result thereof.  Plaintiffs viewed, and Saldana confirmed plaintiffs' views, that

9   Saldana served as a trusted advisor who would advise and counsel plaintiffs in

10  connection with real estate purchase and sale decisions.  Plaintiffs' existing mortgage

11  obligation  upon  the Walden property consisted of a conventional 30 year mortgage

12  loan, fixed at 6.8%, which plaintiffs were able to afford and pay the monthly

13  mortgage obligation timely.  Saldana represented and confirmed to plaintiffs that

14  Saldana would "take care and protect" plaintiffs' interests relative to reviewing,

15  comprehending, explaining, and ultimately obtaining mortgage loan products and

16  services offered by World Savings Bank.  Saldana also confirmed  and  assured

17  plaintiffs that by virtue of a "special relationship" developed and maintained between

18  Tafoya and Saldana with World Savings Bank, plaintiffs' interests would be protected

19  and preserved.  Plaintiffs specifically told Saldana and Tafoya that, based upon

20  Saldana's representations about that "special relationship," plaintiffs authorized and

21  instructed Saldana to seek from World Savings Bank a reduction of the mortgage loan

22  interest rate on the Walden property from 6.8% to 5.9%.

23      Plaintiffs allege that Saldana and Tafoya in April, 2004, advised plaintiffs to

24  acquire a more expensive home for plaintiffs' family, financed by World Savings

25  Bank, by applying for and obtaining an equity line of credit from plaintiffs' Walden

26  property.  Saldana and Tafoya told plaintiffs that plaintiffs would apply 20% of those

27  funds as a downpayment upon the Ebony property, that the monthly mortgage

28  payments to World Savings Bank would be  $1,400.00, that the plaintiffs rent the

1   Walden property, and as a result, plaintiffs' financial position would be significantly
2   enhanced and not expose plaintiffs to significant risks.

3       Plaintiffs acquired the Ebony property for $625,000.00, financed exclusively
4   by plaintiffs' incurring a home equity line of credit upon plaintiffs' Walden property,
5   applying 20% as a downpayment in the form of an adjustable rate mortgage of World
6   Savings Bank, commonly characterized as a "Pick-a-Payment ARM." Tafoya and
7   Saldana confirmed and reassured to plaintiffs that plaintiffs would be able to refinance
8   the Ebony property at no cost and at any time; however, plaintiffs were not informed,
9   and World Savings Bank, Tafoya,  and Saldana did not disclose, that the mortgage
10  loan contained a three year prepayment penalty provision, the extreme difficulty that
11  plaintiffs would experience in attempting to obtain refinancing of that mortgage loan,
12  and that plaintiffs were selectively targeted and specifically identified as objects of the
13  provision of such mortgage loans predicated upon plaintiff's ethnic affiliation.

14      Plaintiffs allege that World Savings Bank, Tafoya, and Saldana did not properly
15  qualify plaintiffs to ascertain and confirm that plaintiffs could in fact afford to
16  consummate the Walden refinance and the Ebony acquisition, based upon the fact that
17  plaintiffs' joint monthly income of approximately $4,000.00.  Plaintiffs allege that
18  these defendants failed and refused to adequately explain and disclose to plaintiffs the
19  significantly inherent risks associated with plaintiffs' consummation of these
20  simultaneous transactions.  Plaintiffs were specifically reassured by defendants that
21  the real estate market would continue its upward spiraling increase, reflecting a
22  concomitant enhancement in real estate values, thereby allaying plaintiffs' merest
23  apprehensions.

24      Plaintiffs allege that when plaintiffs began experiencing difficulties in paying
25  upon both the Walden home equity line of credit and the Ebony mortgage loan and
26  sought mortgage loan modification relief, including refinancing to ameliorate
27  plaintiffs' worsening financial situation due to the increasing monthly mortgage
28  payments, Tafoya, Saldana, and World Savings Bank refused to accord the requested

13      RICO CASE STATEMENT

relief.  Plaintiffs contend that the refusal to accord such relief was patently absent of any expressed criteria to justify denial.   Plaintiffs contend that the refusal was premised upon plaintiffs' ethnic affiliation.

Plaintiffs allege that Wachovia Mortgage, FSB, and Wells Fargo Bank, NA, continued   prosecuting the felonious activities and wrongful conduct of World Savings Bank, FSB, thereby amenable to federal RICO successorship liability, RICO aiding and abetting liability, RICO conspiracy liability, and RICO respondeat superior liability.

a.      Specific Federal Statutes Contravened:

Plaintiffs allege   that defendants engaged in the above activities and/or conduct that constitutes the following form of "racketeering activity," as that term is defined pursuant to Title 18 United States Code §1961(1) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ["RICO"]:

A.      Federal Principal and Aider and Abettor Liability: Title 18 U.S.C. §2;

B.      Federal Mail Fraud: Title 18 U.S.C. §1341;

C.      Federal Mail Fraud re: Aiding and Abetting: Title 18 U.S.C. §1341;

D.      Federal Mail Fraud re: Conspiracy to Contravene:  Title 18 U.S.C. §1341;

E.      Federal Wire Fraud: Title 18 U.S.C. §1343;

F.      Federal Wire Fraud re: Aiding and Abetting: Title 18 U.S.C. §1343;

14      RICO CASE STATEMENT

G.    Federal Wire Fraud re: Conspiracy to Contravene: Title 18 U.S.C. §1343;

H.    Federal Intangible Personal Property Right Deprivation: Title 18 U.S.C. §1346;

I.    Federal Racketeering: Title 18 U.S.C. § 1952;

J.    Federal Racketeering: Title 18 U.S.C. § 1952 re: Aiding and Abetting;

K.    Federal Racketeering: Title 18 U.S.C. § 1952 re: Conspiracy;

L.    Federal Money Laundering: Title 18 U.S.C. §1956   re: Specified Unlawful Activity §1956(c)(7)(A) [RICO §1961(1) contraventions];

M.    Federal Money Laundering re: Aiding and Abetting: Title 18 U.S.C. §1956 re: Specified Unlawful Activity §1956(c)(7)(A) [RICO §1961(1) contraventions];

N.    Federal Money Laundering re: Conspiracy: Title 18 U.S.C. §1956(h) re: Specified Unlawful Activity §1956(c)(7)(A) [RICO §1961(1) contraventions];

O.    Federal Criminally Derived  Property: Title 18 U.S.C. §1957 re: Specified Unlawful Activity §1956(c)(7)(A) [RICO §1961(1) contraventions];

///
///

15      RICO CASE STATEMENT

P.    Federal Criminally Derived Property re: Aiding and Abetting: Title 18 U.S.C. §1957;

Q.    Federal Criminally Derived Property re: Conspiracy: Title 18 U.S.C. §1957 re: Specified Unlawful Activity §1956(c)(7)(A) [RICO §1961(1) contraventions];

R.    Federal Interstate Transportation of Property Obtained by Fraud, False Pretense, and Conversion: Title 18 U.S.C.A. §2314;

S.    Federal Interstate Transportation of Property Obtained by Fraud, False Pretense, and Conversion re: Aiding and Abetting: Title 18 U.S.C.A. §2314;

T.    Federal Interstate Transportation of Property Obtained by Fraud, False Pretense, and Conversion re: Conspiracy: Title 18 U.S.C.A. §2314;

U.    Federal Interstate Receipt of Transported Property Obtained by Fraud, False Pretense, and Conversion: Title 18 U.S.C.A. §2315;

V.    Federal Interstate Receipt of Transported Property Obtained by Fraud, False Pretense, and Conversion re: Aiding and Abetting: Title 18 U.S.C.A. §2315;  and,

W.    Federal Interstate Receipt of Transported Property Obtained by Fraud, False Pretense, and Conversion  re: Conspiracy: Title 18 U.S.C.A. §2315.

1    Plaintiffs allege that the above activities and/or conduct engaged in by
2 defendants constituted a "pattern of racketeering activity," as that term is defined
3 pursuant to Title 18 United States Code §1961(5) of the Racketeer Influenced and
4 Corrupt Organizations Act of 1970 ["RICO"]. Plaintiffs further allege that the
5 activities and/or conduct engaged in by defendants was both related as to the modus
6 operandi engaged in by said defendants of depriving plaintiffs of plaintiffs'
7 interest in business and/or property, and was continuous inasmuch as the activities
8 and/or conduct engaged in by defendants exhibited a realistic, long term threat of
9 continued future injury to plaintiffs' interest in plaintiffs' business and/or property.
10

11    b.    Predicate Act   Commission Dates, Participants In Commission of
12          Predicate Acts, and Factual Description Surrounding Predicate Acts
13    World Savings Bank, by and through Tafoya Realty and Jacqueline Herrera
14 Saldana, solicited plaintiffs in April, 2004, by federal interstate wires and federal
15 mails, to apply and qualify for a mortgage loan to acquire a personal residence at 710
16 Ebony Drive, Oxnard, CA. Plaintiffs at the time owned a home at 54 Walden Street,
17 Oxnard, CA, which plaintiffs previously acquired through Tafoya and Saldana, and
18 a close, intimate confidential relationship emanated between plaintiffs and Saldana as
19 a result thereof. Plaintiffs viewed, and Saldana confirmed plaintiffs' views, that
20 Saldana served as a trusted advisor who would advise and counsel plaintiffs in
21 connection with real estate purchase and sale decisions. Plaintiffs' existing mortgage
22 obligation upon the Walden property consisted of a conventional 30 year mortgage
23 loan, fixed at 6.8%, which plaintiffs were able to afford and pay the monthly
24 mortgage obligation timely. Saldana represented and confirmed to plaintiffs that
25 Saldana would "take care and protect" plaintiffs' interests relative to reviewing,
26 comprehending, explaining, and ultimately obtaining mortgage loan products and
27 services offered by World Savings Bank. Saldana also confirmed and assured
28 plaintiffs that by virtue of a "special relationship" developed and maintained between

1   Tafoya and Saldana with World Savings Bank, plaintiffs' interests would be protected

2   and preserved.   Plaintiffs specifically told Saldana and Tafoya that, based upon

3   Saldana's representations about that "special relationship," plaintiffs authorized and

4   instructed Saldana to seek from World Savings Bank a reduction of the mortgage loan

5   interest rate on the Walden property from 6.8% to 5.9%.

6        Plaintiffs allege that Saldana and Tafoya in April, 2004, advised plaintiffs to

7   acquire a more expensive home for plaintiffs' family, financed by World Savings

8   Bank, by applying for and obtaining an equity line of credit from plaintiffs' Walden

9   property.  Saldana and Tafoya told plaintiffs that plaintiffs would apply 20% of those

10  funds as a downpayment upon the Ebony property, that the monthly mortgage

11  payments to World Savings Bank would be $1,400.00, that the plaintiffs rent the

12  Walden property, and as a result, plaintiffs' financial position would be significantly

13  enhanced and not expose plaintiffs to significant risks.

14       Plaintiffs acquired the Ebony property for $625,000.00, financed exclusively

15  by plaintiffs' incurring a home equity line of credit upon plaintiffs' Walden property,

16  applying 20% as a downpayment in the form of an adjustable rate mortgage of World

17  Savings Bank, commonly characterized as a "Pick-a-Payment ARM." Tafoya and

18  Saldana confirmed and reassured to plaintiffs that plaintiffs would be able to refinance

19  the Ebony property at no cost and at any time; however, plaintiffs were not informed,

20  and World Savings Bank, Tafoya,  and Saldana did not disclose, that the mortgage

21  loan contained a three year prepayment penalty provision, the extreme difficulty that

22  plaintiffs would experience in attempting to obtain refinancing of that mortgage loan,

23  and that plaintiffs were selectively targeted and specifically identified as objects of the

24  provision of such mortgage loans predicated upon plaintiff's ethnic affiliation.

25       Plaintiffs allege that World Savings Bank, Tafoya, and Saldana did not properly

26  qualify plaintiffs to ascertain and confirm that plaintiffs could in fact afford to

27  consummate the Walden refinance and the Ebony acquisition, based upon the fact that

28  plaintiffs' joint monthly income of approximately $4,000.00.  Plaintiffs allege that

18      RICO CASE STATEMENT

these defendants failed and refused to adequately explain and disclose to plaintiffs the significantly inherent risks associated with plaintiffs' consummation of these simultaneous transactions.  Plaintiffs were specifically reassured by defendants that the real estate market would continue its upward spiraling increase, reflecting a concomitant enhancement in real estate values, thereby allaying plaintiffs' merest apprehensions.

Plaintiffs allege that when plaintiffs began experiencing difficulties in paying upon both the Walden home equity line of credit and the Ebony mortgage loan and sought mortgage loan modification relief, including refinancing to ameliorate plaintiffs' worsening financial situation due to the increasing monthly mortgage payments, Tafoya, Saldana, and World Savings Bank refused to accord the requested relief.  Plaintiffs contend that the refusal to accord such relief was patently absent of any expressed criteria to justify denial.  Plaintiffs contend that the refusal was premised upon plaintiffs' ethnic affiliation.

Plaintiffs allege that Wachovia Mortgage, FSB, and Wells Fargo Bank, NA, continued   prosecuting the felonious activities and wrongful conduct of World Savings Bank, FSB, thereby amenable to federal RICO successorship liability, RICO aiding and abetting liability, RICO conspiracy liability, and RICO respondeat superior liability.

Plaintiffs have  sustained injuries to plaintiffs'  interests in property by reason of contravention of RICO Section 1962.

Plaintiffs initiated these proceedings under the federal Racketeer Influenced and Corrupt Organizations Act of 1970 ["RICO"] and the federal Declaratory Judgment Act  of 1946 on 17 April 2009, petitioning  for  monetary  and equitable relief arising from the activities and/or conduct engaged in by defendants that resulted in injuries to the plaintiffs' interests in business and/or property.

Plaintiffs    allege   that the course of   conduct and/or pattern of practice prosecuted by these defendants, by and through the use of federal mails and federal

19      RICO CASE STATEMENT

interstate wires, constitutes fraudulent conduct.  Plaintiffs  further allege  that such intensely repetitive  conduct constituted malicious, reckless, and/or oppressive conduct to destroy plaintiffs' ability  and right to engage in and maintain plaintiffs' interest in business and/or property, especially plaintiffs' intangible personal property interest right to engage in business  unfettered by external interference, committed  by and through defendants' racketeering activity.

                      c.     Federal Mail Fraud and Federal Wire Fraud Predicate Act Commission:

The  RICO §1962(c) claims [RICO primary and aiding and abetting claims] involve the defendants'  commission of federal mail fraud and federal wire fraud, as alleged above.

Plaintiffs allege that the defendants employed the federal mails in connection with engaging in the artifice and scheme to defraud plaintiffs of plaintiffs'  interests in business and/or property.  The use  of  federal interstate wires and federal mails advanced defendants' conduct designed and intended to destroy plaintiffs' business interests.

Plaintiffs  allege  that the representations identified herein above  constitutes material misrepresentations of material fact and the representations materially omitted to disclose material facts.  Plaintiffs  further allege  that defendants knew, and had reason to know, that said representations were in fact materially and knowingly false.  As a direct and proximate result, plaintiffs  sustained, and continues to sustain, a  loss and/or diminution of business and correlative business reputation and character.

///

///

///

///

20     RICO CASE STATEMENT

d.    Predicate Act Commonality and Enterprisal Relationship

Plaintiffs contend that the alleged predicate acts relate to each other as a part of a common plan.

Plaintiffs alleged varying RICO enterprises for purposes of RICO §1962(c). Those RICO enterprises are discussed and analyzed, *infra*, in Response to Question 6.

The common plan amongst the defendants, and those wrongdoers identified herein above, designed and intended through their activities, to deprive plaintiffs of plaintiff's interests in their business and/or property. Such use of federal instrumentalities of federal interstate commerce were reasonably foreseeable and rationally contemplated.

Plaintiffs allege that the defendants engaged in a course of conduct and a pattern of practice involving sub-prime mortgage loan predatory lending practices, and that such practices reasonably involve the employment of federal mails and federal interstate wires to effect and advance defendants' alleged artifice and scheme to defraud.

6.    Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:

a.    State the name of the individuals, partnerships, corporations, associations, or other legal entities, that allegedly constitute the enterprise.

///
///
///

1    Response to Question No. 6(a):

2

3        Plaintiff   alleges    that corporate entity   defendants – World Savings Bank,

4    FSB,  Wachovia Bank, FSB, and Wells Fargo Bank, NA – are part of, and/or are,

5    constituent components of the identified three [3] RICO enterprises  constitute the

6    serial RICO §1961(4) enterprises, and that Saldana, Tafoya, Golden West, WSB,

7    Wachovia, and Wells Fargo,  and other unknown to plaintiffs, were associated with,

8    or employed by, such enterprises.  Plaintiff  furthermore  alleges  that each of  the

9    following configurations  constitute    RICO "enterprise," as that  term is defined

10   pursuant to Title 18 United States Code §1961(4) of the Racketeer Influenced and

11   Corrupt Organizations Act of 1970 ["RICO"] identified at ¶¶ 41-42, page 16-21, of the

12   First Amended Complaint.

13

14            b.        Describe the structure, purpose, function and course of conduct of

15                      the enterprise;

16

17   Response to Question No. 6(b):

18

19       The RICO enterprises  consist  of  corporate  defendants as individual RICO

20   enterprises.  The structure, purpose and function of the enterprises are  alleged within

21   the RICO complaint, and its course of conduct is also described therein.   The

22   enterprises have  has an ascertainable structure wherein WSB, Wachovia, and Wells

23   Fargo Bank, NA, are allegedly engaged in sub-prime mortgage loan predatory lending

24   practices, and, in part, by and through Golden West, Tafoya, and Saldana, which are

25   activities separate and distinct from other activities, e.g., commercial lending practices,

26   financial consulting services.

27   ///

28   ///

c.  State whether  whether any defendants are or were employees, officers or directors of the alleged enterprise.

Response to Question No. 6©):

Plaintiffs do not allege that any defendants are or were employees, officers or directors of the alleged enterprise.

d.  State whether any defendants are associated with the alleged enterprise, and if so, how.

Response to Question No. 6(d):

Plaintiff alleges that the defendants are associated with RICO enterprises, and alternatively, that the individual RICO persons are members of the RICO enterprises. The enterprises have has an ascertainable structure wherein WSB, Wachovia, and Wells Fargo Bank, NA, are allegedly engaged in sub-prime mortgage loan predatory lending practices, and, in part, by and through Golden West, Tafoya, and Saldana, which are activities separate and distinct from other activities, e.g., commercial lending practices, financial consulting services.

e.  State whether you allege that the defendants are individuals or entities separate from the alleged enterprise or that the defendants are the enterprise itself, or members of the enterprise; [and],

///
///

23    RICO CASE STATEMENT

1    Response to Question No. 6(e):

2        Plaintiffs   alleges  that the individual defendant is  associated with RICO

3    corporate  enterprises, and alternatively, that the  RICO corporate persons are the

4    RICO enterprises.

5

6            f.    If you allege  any defendants to be the enterprise itself, or

7                  members of the enterprise, explain whether such defendants are

8                  perpetrators, passive instruments, or victims of the alleged

9                  racketeering activity.

10

11   Response to Question No. 6(f):

12       Plaintiffs allege that the RICO corporate persons are part of identified  RICO

13   enterprises. Plaintiff allege that World Savings Bank, FSB, Wachovia Mortgage, FSB,

14   and Wells Fargo Bank, NA , and that Tafoya, Saldana, and Golden West are

15   perpetrators  of the alleged  racketeering activity for RICO § 1962(c) purposes.

16

17   7.    State whether you allege and describe in detail how  the pattern of

18         racketeering activity and the enterprise are separate or have merged into

19         entity.

20

21   Response to Question No.: 7:

22       Plaintiffs allege  that the RICO  pattern of racketeering activity and the serial

23   RICO  enterprises are separate and distinct.  Defendants, each a RICO §1961(3)

24   "person," are alleged to have engaged in activities constituting RICO §1961(1)

25   "racketeering activity," and that such activities constitute a RICO §1961(5) "pattern

26   of racketeering activity."

27   ///

28   ///

24     RICO CASE STATEMENT

8.  Describe the alleged relationship between the activities of the enterprise and the pattern racketeering activity.  Discuss how the racketeering activity differs from the usual daily activities of the enterprise, if at all.

Response to Question No.: 8:

RICO does not require that the alleged racketeering conduct *be* the conduct of the alleged enterprise.  Instead, RICO requires that the defendant directly or indirectly conduct or participate in the enterprise's affairs through a pattern of racketeering activity.  According to the Ninth Circuit, "rather than requiring that the enterprise itself conduct the racketeering activity, RICO simply requires a 'nexus' between the enterprise and the racketeering activity." ***Sun Savings & Loan Ass'n v. Diedorff***, 825 F.2d 187, 194 (9th Cir. 1987).

The requisite "nexus" has been alleged in this case because (1) Defendants were enabled to commit the  predicate  offenses solely by their positions of power and control, and (2) the predicate offenses were related to Defendants' ongoing activities. ***Sun Saving***, 825 F.2d at  195.  ("Sun's complaint alleges the required nexus.  When he committed the alleged predicate acts of mail fraud, Dierdorff acted in his capacity as Sun's president.  The acts of mail fraud were all related to the activities of Sun. Therefore, the complaint adequately alleges that Dierdorff conducted or participated in the conduct of Sun's activities through a pattern of racketeering activity").

Plaintiffs allege that the RICO corporate persons are the RICO enterprises. Plaintiffs allege  that the RICO  pattern of racketeering activity and the serial RICO  enterprises are separate and distinct.  Defendants, each a RICO §1961(3) "person," are alleged to have engaged in activities constituting RICO §1961(1) "racketeering activity," and that such activities constitute a RICO §1961(5) "pattern of racketeering activity.

9.     Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering activity.

Response to Question No.: 9:

The multiple RICO Section 1962(c) enterprises were benefitted from the pattern of racketeering activity by and through receiving monetary proceeds from plaintiffs, by and through a RICO pattern of racketeering activity.

Plaintiffs allege that the RICO pattern of racketeering activity and the serial RICO enterprises are separate and distinct. Defendants, each a RICO §1961(3) "person," are alleged to have engaged in activities constituting RICO §1961(1) "racketeering activity," and that such activities constitute a RICO §1961(5) "pattern of racketeering activity."

10.     Describe the effect of the activities of the enterprise on interstate or foreign commerce.

Response to Question No. 10:

Plaintiffs allege that the enterprises engaged in and the activities of which affected interstate and/or international commerce. It may be inferred from the interstate nature of defendants' activities that their conduct has affected interstate commerce. The interstate requirement is *de minimis* in any case. *See United States v. Robertson*, 514 U.S. 669 (1995) *and United States v. Bagnariol*, 665 F.2d 877, 892 (9th Cir. 1981), *cert. denied*, 456 U.S. 962 (1982).

The Ninth Circuit recently amplified upon the *de minimis* impact in *United States v. Shryock*, 342 F.3d 948 (9th Cir. 2003). Affirming the RICO substantive, aiding and abetting, and conspiracy convictions involving murder for hire, extortion,

and drug distribution activities of the Mexican Mafia, the Court summarily rejected the appellants' argument that the RICO enterprise must have a "substantial" effect on interstate commerce:

> In *United States v. Juvenile Male*, we held that "all that is required to establish federal jurisdiction in a RICO prosecution is a showing that the individual predicate racketeering acts have a de minimis impact on interstate commerce." 118 F.3d 1344, 1347-49 (9th Cir. 1997). The district court, therefore, correctly instructed the jury that a de minimis affect on interstate commerce was sufficient to establish jurisdiction under RICO. [foot note omitted].

342 F.3d at 984.

      11.    If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:

          a.    State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and

          b.    Describe the use or investment of such income.

Response to Question No. 11:

Plaintiffs do not allege a violation of 18 U.S.C. Section 1962(a).

      12.    If the complaint alleges a violation of 18 U.S.C. § 1962(b), provide the following information:

27    RICO CASE STATEMENT

       (a)     Describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise, and,

       (b)     State whether the same entity is both the liable "person" and the "enterprise" under Section 1962(b) .

Response to Question No.: 12:

The complaint does not allege a violation of 18 U.S.C. § 1962(b).

13.     If the complaint alleges a violation of 18 U.S.C. § 1962©), provide the following information:

       (a).    State who is employed by or associated with the enterprise; [and],

       (b).    State whether the same entity is both the liable "person" and "enterprise" under § 1962©).

Response to Question No. 13:

       (a).    Defendants:

- ♦ Wachovia Mortgage, FSB
- ♦ World Savings Bank, FSB
- ♦ Wells Fargo Bank, NA
- ♦ Golden West Savings Association Service Co.
- ♦ Jacqueline Herrera Saldana
- ♦ Tafoya Realty

are employed by and/or associated with the following RICO Section

1    1962©) enterprises:

2              ♦    Wachovia Mortgage, FSB

3              ♦    World Savings Bank, FSB

4              ♦    Wells Fargo Bank, NA

5              ♦    Golden West  Savings Association Service Co.

6              ♦    Jacqueline Herrera Saldana

7              ♦    Tafoya Realty

8

9

10         (b).    The liable "person" includes each of the afore identified

11                 defendants:

12              ♦    Wachovia Mortgage, FSB

13              ♦    World Savings Bank, FSB

14              ♦    Wells Fargo Bank, NA

15              ♦    Golden West  Savings Association Service Co.

16              ♦    Jacqueline Herrera Saldana

17              ♦    Tafoya Realty

18

19

20     14.    If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in

21            detail the alleged conspiracy.

22

23

24     Response to Question No. 14:

25

26     The complaint alleges a violation of 18 U.S.C. § 1962(d).

27     Plaintiffs aver  RICO §1962(c) and that plaintiffs allege that the defendants

28 conspired to contravene RICO §1962(c) . The RICO conspiracy is designed, intended,

29     RICO CASE STATEMENT

1   implemented, and executed to achieve the deprivation of interests of plaintiffs, i.e.,

2   destruction of credit, loss of monies, and/or loss of real property interests.

3

4       15.    Describe the alleged injury to business or property.

5

6       Response to Question No. 15:

7

8           a.    Plaintiffs   allege   that plaintiffs   experienced the following

9           injuries to business or property interests:

10           1.    Destruction of credit worthiness.

11           2.    Loss of real property interests.

12           3.    Loss of monies.

13       As stated herein above, plaintiffs  were  defrauded of plaintiffs' rights in

14   property  and/or business as alleged.  Consequently, plaintiffs are entitled to recover

15   for losses, including pre judgment interest pursuant to 18 U.S.C.  §1964(c).

16

17

18       16.    Describe the direct causal relationship between the alleged injury and the

19           violation of the RICO statute.

20

21

22       Response to Question No. 16:

23

24       The causal  relationship  between the alleged  injuries  and  the  violation  of

25   the RICO  statute   is the result of the consistently persistent campaign and *modus*

26   *operandi*, as alleged within the complaint.  ***See Mendoza v. Zirkle Fruit Co.***, 301

27   F.3d 1163, 1168 (9th Cir. 2002)(reverse and remand dismissal on RICO  proximate

28   causation issue).

***RICO §1962©):***    The defendants  conducted the affairs of the identified §1962©) RICO enterprises, whose activities affect federal interstate commerce,  through  a RICO pattern of racketeering activity, including mail fraud, wire fraud, interstate transportation of  monies  exceeding $5,000 and/or properties  procured  through  fraud, and/or conversion, racketeering, and  money laundering.

The injuries sustained  by plaintiffs were  proximately caused by defendants' conduct  giving  rise  to  contravention  of  federal  RICO Section 1962, by and through a RICO pattern of racketeering activity as alleged.

17.    List the damages  sustained by reasons of the violation of § 1962, indicating the amount for which each defendant is allegedly liable.

Response to Question No. 17:

Plaintiffs allege that they are entitled to recover from each defendant the following damages:

1.    Damages for loss of monies,  according to offer of proof at time of trial.

2.    Damages for destruction of creditworthiness.

3.    Prejudgment interest.

4.    Attorneys' fees and costs  pursuant to 18 U.S.C. § 1964(c).

18.    List all other  federal causes of action, if any, and provide the relevant statute numbers.

RICO CASE STATEMENT

Response to Question No.: 18:

♦    Federal Declaratory Judgment Act of 1946 [Title 28 United States Code §§2201-2202].

♦    Federal Ku Klux Klan Act of 1871 [Title 42 U.S.C. §§1981-1982]

♦    Federal Equal Credit Opportunity Act of 1974 [Title 15 U.S.C. §§ 1691 e et.seq.]

♦    Federal Fair Housing Act of 1968 [Title 42 U.S.C. §§ 3601, et.seq.]

19.    List all supplemental state claims, if any.

Response to Question No. 19:

Plaintiffs allege the following federal supplemental claims under 28 U.S.C. § 1367(b):

♦    Common law fraud

♦    Breach of fiduciary duty

♦    Breach of implied warranty of good faith and fair dealing

♦    Constructive fraud

♦    Business & Professions Code §§ 17200 and 17500

♦    Unjust Enrichment

♦    Civil Code §1750

///
///
///
///
///
///

1    20.    Provide any additional information that you feel would be helpful to the

2           Court in processing your RICO claim.

3

4    Response to Question No.: 20:

5    Plaintiffs  respectfully reserve  the  right to further supplement this RICO

6  Case Statement in  further response to the RICO Case Statement Order  entered 5  May

7  2009.

8

9                                 Conclusion

10

11    Plaintiffs respectfully reserve the right to petition this Honourable Court to

12  further supplement this RICO Case Statement.

13

14  Dated: 3 June  2009.

15                    DAVID A. ST. JOHN (SBN: 048746)
                      ST.  JOHN & FOBI, LLP
16

17
              *By:* David A.  St.  John
18            DAVID A. ST. JOHN
              ATTORNEYS    AND    COUNSELORS    AT    LAW    FOR
19            PLAINTIFF: GRACIELA ORTIZ and JESUS ORTIZ

20

21

22

23

24

25

26

27

28

33     RICO CASE STATEMENT

1            CERTIFICATE OF SERVICE

2    I am a resident of the State of California, over the age of eighteen years, and not a
     party to the within action.  My name and business address is St.  John & Fobi, LLP,
3    235 West Seventh Street, Oxnard, CA 93030-7131.

4            On 3 June 2009, I served the within document(s):

5    RICO CASE STATEMENT

6    by CM/ECF: I caused said document(s) to be served by means of this Court's
     electronic transmission of the Notice of Electronic filing the Court's transmission
7    facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in
     the service list obtained from this Court:

8
     Christopher A.  Carr
9    ccarr@afrct.com
     Raymond M.  Collins
10   rcollins@afrct.com
     ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP
11   199 South Los Robles Avenue, Suite 600
     Pasadena, CA 91101-2459

12

13           I declare under penalty of perjury under the laws of the United States that the
     above is true and correct.
14           Executed on 3 June 2009, at Oxnard, CA.

15                    By:   David A.  St.  John
                      _____
16                           DAVID A.  ST.  JOHN

17

18

19

20

21

22

23

24

25

26

27

28

34        RICO CASE STATEMENT